morning, please call the case set for argument this morning. Good morning, your honors. My name is Pamela Rubio. I represent Lloyd Johnson on behalf of the Office of the State Appellate Defender. Assistant State's Attorney Annette Collins for the people of the state of Illinois. About how much time do you think? About 15 minutes for our opening argument and a couple minutes for the following. And I anticipate needing no less than that too. Thank you. May it please the court. A crime requires both a guilty act and a guilty mind. The cruel treatment statute at issue in this case does not clearly set out either of these components. It thus violates due process in that it potentially punishes innocent conduct and is unconstitutionally vague, leaving citizens and law enforcement alike without adequate notice of what conduct or mental state is prescribed by it. Can I ask you, Ms. Rubio, before we jump into the constitutionality, you have a sufficiency of the evidence argument? I do. And we would not need to get to the constitutional issue if you're right on that. So could I ask you to talk about that a little bit? Sure. But first I'd like to point out that in order to adequately analyze the reasonable doubt analysis, it is required that this court review what exactly the statute prescribes. And so our contention is that the constitutionality of the statute is so intertwined with the reasonable doubt argument that this court should reach that issue. But I'm happy to discuss the reasonable doubt argument first. Well, you know, cases instruct us to try to avoid constitutional issues if at all possible. Why should we not abide by that instruction if the sufficiency argument is sufficient? Sure. There have been instances where the Illinois Supreme Court has found that in order to address the reasonable doubt sufficiency argument, it needed to review the parameters of the statute. So in particular, the constitutional attack in this case is so related to the reasonable doubt argument that under the particular circumstances of these types of constitutional attacks, it's required to look at the scope of the statute because without looking at the scope of the statute, it's really difficult or almost impossible to ascertain whether the defendant is actually guilty of it. In People v. Carpenter, that's exactly what the Illinois Supreme Court did. On appeal to the Illinois Supreme Court, the state argued that the sufficiency argument alone should be reached by the court, and the court disagreed and said that it had to reach the constitutional issue first before it could decide whether that defendant was, in fact, guilty under that statute. But in terms of reasonable doubt here, the state charged Mr. Johnson with cruel treatment to six pitfalls. He was found guilty of only one of those counts as it related to one of the dogs, and that dog had some bite marks to its face. Is there a name for that dog? I'm trying to figure it out. Some dogs had names, but I wasn't clear if this particular dog had a number. I can't remember which one in particular it was. The male. The Brindle, right. So I'll refer to it as the Brindle. That was the only physical injury to any of these dogs charged by the state. All the other evidence related to circumstances in the home that are not criminal or culpable conduct related to the existence of crates in the home, which are commonly used for training dogs and, in fact, are perfectly legal. Tethers in the home, which, by the way, none of the dogs were seen with the tethers on the dogs and chains. Again, these things are not illegal to own. And, in fact, the owner's duty statute regulates the use of tethers. So clearly the fact that a person even owns a tether is not illegal conduct. Not keeping food and water out. Again, the only evidence that the state presented about food and water was that it wasn't visible by the officers when they came the first time and then the second time days later when they executed the search warrant. But, in fact, the physical evidence relating to the dogs is undisputed that the dogs were in excellent physical health. None of them were malnourished. None of them had scars or injuries to them. So clearly the fact that... We're only talking about this one dog. Right, but the state's argument at trial and on appeal is that the circumstantial evidence surrounding the entire home and the conditions of the dog suggest animal cruelty. So we've got a house strewn with feces smelling like urine. That's not evidence of animal cruelty? No, it's not. The officers testified that there was feces and urine in the home on those two instances that they were in the home. There's no evidence that the animals were soiled. Their coats were well cared for. There's no other evidence that that's the way the house always was. And, in fact, there's evidence the police officers admitted that while they were executing the search warrant, a team of ten officers, a SWAT team, and the animal control team all bombarded the house, used noise flash bombs, and moosed the dogs to capture them. And a couple of the officers admitted that that could be resulting in the animal desiccating or urinating out of anxiety or fear during the actual execution of the search warrant. So it's really unclear how much feces and urine was there. And that there are feces and urine in an apartment that houses six animals in and of itself is not sufficient evidence of cruel treatment. And, again, this case really demonstrates... The feces is in the cages where the animals are kept? That's not cruel treatment? I think that if the state had provided more evidence about how often and whether the animals were ill in any fashion or were soiled in any fashion, possibly that act could constitute cruel treatment. So the other fact is that the state has to show the conditions under which the animals were kept over a prolonged period of time? I think that there means under these particular facts, a prolonged period of time would suggest more other culpable conduct. But the existence of feces and urine in a cage alone does not establish any kind of culpable mental state. And, in fact, this is the perfect example of how the statute reaches too far. Because the state is relying on evidence that is not associated with a guilty mind to try to establish Mr. Johnson's guilt. But the judge in his decision did not consider those things. Correct. The judge... He only considered the one dog having the bites around the nose. Right. And we contend on appeal that the circumstantial evidence concerning the surroundings of the dog, because the other five dogs, the counts as they related to the other five dogs led to acquittals, those facts were the only facts that would relate to those dogs. So we contend that those facts should not be considered by this court because there was an acquittal to those facts. But if this court does, we are prepared to argue, and we have argued that those pieces of evidence are insufficient. As it pertains to the actual dog bites, again, there's insufficient evidence tying Mr. Johnson at all to those dog bite marks. The only evidence about the bite marks is that on the first day that the officers arrived at the house, there were some dog bite marks on one of the dog's faces. When they executed the search warrant, they did not say that the dog had more dog bite marks. It was the same amount of dog bite marks. And there's no evidence about how those came about. If Mr. Johnson was aware of them, if Mr. Johnson had any involvement in them, the state... So the evidence is that the dog might have injured himself under the bed frame? That was the defense witness's testimony, yes. But even if we just look at the state's evidence, the state provided no evidence about how this dog was injured. It could have been accidental. Maybe the dog food isn't out and readily available to the dogs because those six dogs fight about the dog food and water, and maybe that's how the injury resulted. Maybe it was a stray dog when they were... Mr. Johnson... There's evidence that Mr. Johnson walked the dogs by the park. Maybe it was another person's dog that attacked this dog. We have no idea. And the state's reliance on those dog bite marks alone does not prove beyond a reasonable doubt that Lloyd Johnson committed the crime of cruel treatment to animals. Are you suggesting that perhaps it's necessary for the state to provide a better foundation for the opinion testimony that there was a dog bite on the dog's face? Do they need expert testimony as to what cast to the pool environment for a dog or how a dog's injury occurred? Because, I mean, I've seen dogs for my entire life, and personally I couldn't tell how a dog bite occurred or whether a bite exists. Right. Well, there was no objection below as to the foundation of the testimony. The only testimony about the dog bite marks, some of the officers testified that there were marks on the dog, and then the veterinarian who testified on behalf of the state said that he described them as dog bite marks. But we don't know when inflicted. No, we don't know when inflicted. We don't know under what circumstances they were inflicted. There's no other evidence. The state's theory is that this is evidence of dog fighting. But if you look at the entirety of the evidence, it actually supports the opposite because none of the other five dogs had any injuries whatsoever. There was no testimony about any scarring on these dogs, no testimony that there was any marks as it related to weighing the dog's shoulders down with any kind of harnesses or chains, and no evidence that their muscles were overworked. As the trial court itself said, these dogs were in excellent physical condition other than the unexplained bite marks on the one dog. Is the statute in existence to combat dog fighting, or is it for any dog under any circumstances? The statute is very broad. It states that no person, as it existed at the time of this offense, no person or owner may beat, cruelly treat, torment, starve, overwork, or otherwise abuse any animal. So it doesn't limit itself to an owner of a dog, and it doesn't limit itself to particular conduct. The terms cruelly treat and otherwise abuse are really broad, and they're not terms that are necessarily related to conduct that is wrongful or a mental state that's wrongful. Let's assume the legislature was more concerned about the effect on the animal and not the owner or possessor's state of mind. So if a dog, for example, is left outside all night on an evening when it's 10 degrees below zero, does it make a difference if the owner let the dog out, fell asleep on the living room sofa and never woke up as the animal was clawing at the back door and barking, or whether the owner was simply fed up with the animal and said, Oh, you stay outside all night. I don't care. In terms of the abuse of the animal, is there any difference? Well, there is because this is a criminal statute, and a criminal statute, like I said in the beginning, requires a guilty act and a guilty mind. Now, the factors that you've relayed would be covered under the duty of owner statute, which provides affirmative obligations on an owner to care for, in a reasonable manner, their dogs. A violation of that law would be a crime of omission. Here we have a criminal law that is trying to criminalize conduct that may not be criminal. And what about the state's argument that the necessary state of mind is implied? Unless it's stated to be absolute strict liability, it's implied. Implying a mental state such as knowledge or intent does not save the statute because, again, we're talking about acts. Even if they're intentionally done or knowingly done, there are acts here that could constitute cruel treatment, because the term cruel is so broad, or abusive treatment, which, again, the word abusive is very broad. It would encompass acts that are not culpable acts. And I'll give you an example. Because the statute doesn't limit itself, again, to owners of dogs, and it relates to any animal, if I see a dog on the street, a stray dog, that is obviously harmed and will probably die if I don't do anything to help it, does my action of turning my back to this dog constitute cruel treatment under this statute? It's unclear. And so it's really difficult for citizens and law enforcement to determine which conduct falls under the statute and which doesn't. Even if I intentionally turn my back to that animal, it's still conduct. That is not criminal conduct. And that's why it potentially punishes them. It's a conduct. So what evidence was there here of any action of Mr. Johnson? None. Well, then how can we be guilty of a criminal act? Well, we argued that he can't be guilty. But that doesn't get us into the constitutional issue. I mean, just on the sufficiency of the evidence itself, if we have no evidence of any act, conduct, or otherwise by Mr. Johnson. I guess, again, I would contend that in order to look at the state's argument and determine whether the circumstantial evidence that it's pointing to assert that Mr. Johnson was guilty of this offense, you would need to determine the scope of the phrase cruel treatment or otherwise abuse because you need to determine whether the existence of the dog bite marks, the presence of crates and tethers, the lack of food or water available to the dogs at those times would constitute cruel or abusive treatment. So if none of those circumstances are tied to the defendant, what difference does it make? Well, it makes a difference to Mr. Johnson because he was charged, prosecuted, and found guilty of this offense under those facts. What I'm saying is in terms of Justice Hyman's question on the constitutional issue, if none of the acts that the state charged Mr. Johnson with are tied to him under the evidence, why would we need to address the constitutionality of the statute? I just think it's the first step in a sufficiency analysis is to look at what the statute prohibits and then look to the defendant's conduct to determine whether his conduct or lack thereof falls under the statute. And so like in Carpenter, it's necessary to look at the scope of the statute and its defining terms to determine whether the alleged conduct by the defendant falls under that. And, of course, we can test both, but I think that that first step is necessary. And it's also necessary because he does have standing, obviously. He was convicted of this case, of this crime. And it's necessary because the court should prevent arbitrary enforcement of this statute and law enforcement and citizens need guidance as to what this statute criminalizes. And so for those reasons, I think that it's fundamentally important for this court to reach those constitutional issues. Well, you have to deal with the case before us and the facts before us. And, again, it doesn't seem with regard to this particular finding of guilty, the evidence of conduct was pretty slim. Maybe the state will say otherwise, but it didn't really see much in the record. So your contention is that if the statute says or prohibits a person from walking across the street, and your position is that is an unconstitutional statute, if the evidence was such that there was no evidence that this defendant crossed the street, your position is before you even look to see whether there's evidence of him violating the statute, you have to look at the statute first. Yes. I think that those things are so intertwined that it's difficult to parse them out because of the particular constitutional attack on this statute. But the point I think the court is trying to make is if there is no evidence that this person crossed the street, shouldn't judicial restraint demand that we look to see whether we should even get to the statute? Because there is no evidence of a violation of the statute or ordinance. So, therefore, we do not need to get into it. Again, I would just say that of course we would welcome a reversal based on the insufficiency of the evidence, but we also encourage the court to review the constitutional issues because they're so intertwined. And also the fact that we're standing here and I'm arguing that this evidence does not support a finding of guilt, and the state is arguing that the same evidence does support a finding of guilt, does actually relate to the scope and content of the statute. And so for those reasons, I think it's important to review the constitutionality of it. So if there are no other questions, we ask that Mr. Johnson's conviction for... I do have one question. Yes. Are you not appealing the conviction for a felon in possession of an uninsured dog? We are not. We are not. And he was also charged with six counts of a violation of owner's duties, and he was acquitted of all six of those. Right. Right. I just wanted to point that out because the state was relying on the same evidence as it related to the owner's duties counts for which he was convicted. So it's... That's another indication of the insufficiency of the evidence. I believe so. I believe that that's what... And was Mr. Johnson released within 10 years of this offense? You know, I don't know the answer to that, but I can look at the facts again and refresh my recollection. I said something about 1999.    2000 conviction. 2000 conviction. 2000 conviction. 2000 conviction. 2000 conviction. I believe that the contested issue at trial as it related to those counts were whether he was in possession of the animals, and we didn't pursue that issue on appeal. Well, perhaps defense lawyers should be more attuned to the elements of offenses in all aspects of the trial. It just seems to me that within 10 years of his discharge from the penitentiary meant that he got released from the penitentiary probably sometime in 2004 or 5 or 6, and I don't know that that evidence is in the record. I could be wrong. I'm not. I don't remember those facts. I apologize. Thank you. Good morning again, Your Honors. Assistant State's Attorney Annette Collins for the People. It's our position that not only did we prove the offense beyond a reasonable doubt, but the statute passes constitutional muster. The terms of the statute are sufficiently definite such that a reasonable person would know what is prohibited. For instance, the animal cruelty statute prohibits starvation of an animal, beating of an animal, tormenting an animal, likewise cruelly treating and otherwise abusing an animal. Those terms are highly specific in terms of the conduct prohibited, and as Justice Mason pointed out, it's our position that Section 4.3 supplies a mental state, knowing and intentional, and, in fact, the conduct that's prohibited is not innocent itself. By its very nature, it has a malice component. So to the extent the defendant is arguing that the statute somehow sweeps in a significant amount of innocent conduct within its reach, that argument is wholly rebutted by the very language that the legislature chose to prohibit. It is hardly like the farmer in WIC in the ag arson statute that could potentially burn his barn down and injure inadvertently a fireman. That's innocent conduct. No one, no reasonable person could possibly say that cruelly treating an animal is innocent conduct, with or without a specific mental state. Likewise, the same is true of starvation. One does not simply inadvertently or accidentally starve an animal, abuse an animal, or beat an animal. Now, as to... Well, what about the dog owner who is woken up in the middle of the night by her dog, lets the dog out in the 10 degrees below zero weather, lays down on the living room sofa and falls fast asleep? That might be an example where that maybe doesn't constitute cruel treatment, because the next question... No one decides that, though. I mean, because the police are called, and they find a half-frozen dog on her back porch, and she answers the door and says, oh, my goodness, I didn't realize. I fell asleep. Do they have the discretion to charge her and say, I don't believe you? In any case, police would have the discretion to charge the individual. But in a case like that, it would depend on the particular facts. Mere inadvertence is not cruelty. Cruelty by definition, and this is where defendant wants to make cruelty be this sort of immutable, fixed meaning. And, frankly, that's not the precision that we expect with respect to criminal statutes. We know that language is susceptible sometimes to reasonable debate. So the mere fact that we're having debates about what cruelty means doesn't make it unconstitutionally vague. To be unconstitutionally vague, a term has to be so indefinite that reasonable people don't know what it means. And, frankly, Your Honors, the cruel treatment to animals statute has been in effect, at least in this form, since 1973. Before that, there have been statutes on the books, at least since the late 1880s, so almost 150 years, that have prohibited, and I'll quote this, cruelty to animals. So the term cruel and cruelty is so woven within the fabric of our criminal justice system that it is almost inconceivable that we wouldn't know what that term means. And, frankly, a standard dictionary definition of the term cruelty speaks of deliberateness, a deliberate indifference or a deliberate intent to cause suffering. Where was that deliberate indifference here? It was, like we argued below, a combination of factors. But what combination? Well, the vet actually testified that there was a number of injuries. And the police officers... A number of bites. Well, there was the bites on the nose, and those were fresh. But there were also other bites all over the front of the dog. As the vet testified, the veterinarian said, the dog suffered bite wounds not just on its nose, but on its forelimbs, on the front of its body, and on its neck. And there's also the circumstance of this heavy toe chain, and the fact that these heavy toe chains are used to strengthen the muscles of dogs for purposes of fighting. That's undisputed in this record. But there's definitely no conduct by him, by Mr. Johnson. You can't, just because somebody owns something that could be innocuous, doesn't turn it into a crime. Well, the thing is, we can't look at the evidence with reasonable hypotheses of innocence. Are we supposed to assume he's guilty? No, we're supposed to look at it in the totality of the circumstances in the light most favorable to the people at this point. And to suggest that a heavy toe chain, not just a dog collar, but a heavy toe chain is innocuous when used on dogs, I would suggest that... Who used the chain on the dog? Defendant was the primary caretaker. Who said that? All of the witnesses. The mother, the woman who lived in the home, was gone all day long. That was her testimony. The daughter was also gone all day long. All of the neighbors testified that defendant cared for the dogs. Now, that evidence was meant to suggest to the trier of fact, the judge below, that somehow defendant really was a good caretaker for these animals. Well, was there any evidence that the chains were used on these dogs? Yes. This dog? Yes. Well, not specifically this dog. There was evidence, however, in this record that those dogs, the heavy chains, were used on them. What about this dog? Nothing specific as to each animal. So, therefore, he's guilty of the offense charged because there was a chain in the house, although there was no evidence that the dog that the judge felt was mistreated or treated cruelly. There was no evidence that the chain applied to that dog? No, there was not, Your Honor. And the argument that we made below was that this is circumstantial evidence. We did not have a direct evidence case. The circumstantial evidence you have is what? The chain being there? The chain was used on the dogs. The dogs wore those chains on every dog. Somebody, I think they're a veterinarian that lives down the street or a head of office nearby, somebody said that there's nothing wrong with using that type of equipment to strengthen the dogs. And I would suggest to you, Your Honor, that the judge likely discounted that testimony. The witness that you're referring to is the vet tech. The first thing she testified to was that she had come to that home and cared for those dogs sometime in April, which was a date after animal control had taken the dogs away. So not only did she start with a lie to the court, and defense counsel had to back it up and try to get her to talk about the relevant time frame, but her denials about, no, chains aren't used for dog fighting, never, I've never seen that, those were incredible in light of the fact that the vet, the actual vet, not just the vet technician, but the vet that testified in the state's case, said that those chains are used to strengthen dogs and the dog bites that were found on the white brindle were indicative of dog fighting. Now, the vet couldn't testify that there was an actual dog fight, and we didn't have direct evidence of a dog fight. But it's our position that whether or not this evidence is overwhelming is not really the question now. The question is, did it show enough? And based on the circumstantial evidence in this case, it's our position that it showed that there was cruel treatment in the home, and it was feces in the cages, two dogs to one cage, cages stacked on top of each other. Two dogs to one cage. Again, that wasn't the brindle, right? We don't know. We don't know. And, again, we have these two. We've only got one conviction that we're concerned with. And so if, for example, the State came in and said there are six dogs in the home, we know for sure that two of them were mistreated. And the possessor in this case, Mr. Johnson, is convicted of cruelty. Based on that evidence, cruelty toward another animal, we couldn't sustain that, could we? No, we couldn't. And the reason that I'm pointing out this other evidence with respect to which dog it is, it has to do with the atmosphere in the home, because I would suggest that that was probably the likely rationale of the judge below, that there was all of this evidence about how, in general, the dogs were treated, and the one dog that manifested actual physical injuries from the cruelty in that home was the one dog that the judge felt survived, that count survived, in terms of a reasonable doubt challenge. And that is our position, that we can't ignore all of the other evidence. And I want to point out, with respect to Justice Hyman's point, that the judge didn't look at the other evidence or potentially only found guilt as to this one dog because it was the injury alone. There's nothing to indicate that the judge below focused only on the injury. I agree that the injury was the one thing that put it over the top, for purposes of our case in chief, with that dog. But that was not the only evidence that the judge considered. In fact, there's nothing to indicate that that was the only evidence upon which the judge based his ruling. But it still has to be Mr. Johnson's conduct. And unless that's tied up to Mr. Johnson, I mean, it's his treatment of the animal. That's correct. And as to all of that, where does that connect up? Where is the evidence that connects Mr. Johnson as opposed to Mrs. Jackson or her daughter or anyone else that may have been exposed to these dogs? I would suggest the only evidence we have of that, Your Honor, is the circumstantial evidence that he was the caretaker. He was the primary caretaker in that home. Now, they disavowed that at trial. Again, there was a whole lot of defense rejection of the state's evidence, a whole lot of sort of cover-up of what was going on in that home. And, in fact, some of the stories about how that dog was injured on a bed frame are, frankly, absurd, because we have unrebutted testimony from a veterinarian to indicate that these were bite wounds,  Now, whether or not we proved our case with respect to the sufficiency of the evidence is a separate inquiry from the constitutionality. And as we made clear in our brief, if we didn't prove our case, we don't get to the constitutional question. But I still have to absolutely urge this Court to use caution in taking a look at this statute in the manner in which defendant wants you to, because defendant's expectation for the type of precision in the word cruelty is not warranted. And it's not appropriate as a matter of law. Likewise, defendant's argument that somehow the animal cruelty statute does not punish only culpable behavior, that's absolutely, excuse me, that's absolutely rebutted by the very language of that statute. Now, in the briefs, defendant pointed to the aggravated animal cruelty statute as sort of an illustrative guide of what the legislature should be doing, because they didn't do the exact same thing with respect to the animal cruelty statute, that somehow animal cruelty is unconstitutional. But when we take a look at the aggravated cruelty statute, that statute prohibits all acts that result in great injury or death. Now, certainly if there's no culpable mental state or intent on that, it could potentially sweep in innocent conduct. And that's why it has to be a willful or an intentional act with the intent to cause death with respect to the animal cruelty statute. That same requirement doesn't exist for the animal cruelty statute because it isn't just any act. Remember, it's starvation, abuse, beating, cruelty, torment. Each of those acts is not innocent. By their very nature, they have a culpable malice component to them. Was there any evidence as to the brindle's temperament? No, there was not at all. No. Is it customary for the Chicago Police Department SWAT teams to invade a house at 6.30 in the morning and throw compression bombs into the house in a dog case? I have to say I don't know what the practice of the Chicago Police Department is. I think it's highly unlikely. But when there are six dogs, pit bull dogs, that are potentially used for fighting and they are loose in the home, I think that was the concern. That was the concern of the original officer because of the nature of the wounds to the animal. And five days for this concern to be amplified? I think that that has to do with staffing, Your Honor. I would be basically speculating by answering that question one way or another. I don't know. Oh, what I do know is that this statute, animal cruelty, has been in effect in one form or another for over 150 years. It is neither vague nor does it potentially punishes innocent conduct. And if we did not meet our burden of proof here, it is not because the statute is vague, ambiguous, or in any way unconstitutional. It's simply because we, in this case, didn't reach that threshold by a very minute amount. Because we do have a substantial amount of evidence, albeit not directly tied to the defendant, but circumstantially tied to the defendant where these dogs, and in particular the one dog, was injured as a result of the treatment in that home. So for these reasons and those in our brief, we would ask that this court to affirm. Let me ask you one question. Sure. Am I reading the felon in possession of an unneutered dog correctly? It says a felon can't possess a dog within 10 years of release? I think so, Your Honor. Was there any evidence of when this defendant was released from the penitentiary? It might have been in the papers that we presented with respect to the proof of his prior conviction. I don't have a recollection and I didn't have the record in front of me. And because it was not contested below, I did not pay an exact close attention to it. Okay. Thank you. Thank you. First, Your Honor, with respect to the felon in possession, in reviewing my notes, I don't have particular copies of the certified copies of conviction that were presented. But it does show that he was convicted in 2005 of burglary. I'm sorry, 2004 for burglary. And during sentencing, the court commented that he received a sentence of six years. So with this court's permission, I would like to review more closely the notes. Well, that's right. You didn't argue it on appeal, so it's more a curiosity point for me. And he was also convicted in 2010 of retail theft. So I could double-check all of those facts. Not necessary. Okay. Thank you. In terms of the State's response, with respect to the State's argument that the statute is sufficiently precise and that the citizens of the State are not entitled to precision, we're not arguing that precision is required. We're arguing that citizens and law enforcement know what a crime is punishing. And in this case, there are some elements, some actions that are specified by the cruel treatment statute that we're not contesting would be associated with a malicious or culpable mental state. But the broad scope of the terms cruel treatment and otherwise abuse opens the statute up to punishing much more than just beating, starving, or other things that are inherently malicious. In terms factually, with respect to the chains, there's no evidence at all that any of these dogs were ever seen on the chains that were found in the home. And there was some testimony that chains could be used for strengthening muscles of dogs. I did personally a quick review online of the use of chains for strengthening muscles, and some dog owners actually want to strengthen muscles for other purposes other than dog fighting. Anyway, the point is the existence of these chains in and of themselves were never tied to any kind of cruel treatment of these dogs, or in fact to Mr. Johnson. And with respect to him being the primary caretaker, we take issue with that. It's clear that Doreen was the owner of these dogs. She was the one to which the five dogs were released into her custody after the case was over. The issue at trial was whether Mr. Johnson took care of these dogs, but it was undisputed that she was the actual owner of these dogs. Except for this particular dog that apparently they were joint owners. Well, he was found in possession, not necessarily that he was the owner of the dog. And for those reasons and all the reasons stated in the briefs, we ask that this court reverse Mr. Johnson's conviction. Thank you very much. Thank you. The case was taken under advisement. We appreciate the briefs and your preparation and good arguments this morning. Thank you very much, and we'll stand adjourned.